UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 86-21474 |
| | : | CHAPTER 11 |
| EARNED CAPITAL CORPORATION, | : | ADVERSARY NO. 07-2496 |
| DEBTOR | : | DOCUMENT NO. 1 |
| | : | COMPLAINT FOR INJUNCTIVE RELIEF |
| ERNST & YOUNG, LLP successor | : | DOCUMENT NO. 37 |
| to ARTHUR YOUNG & | : | DEFENDANTS' MOTION TO DISMISS, OR |
| COMPANY, Plaintiff | : | IN THE ALTERNATIVE, ABSTENTION |
| | : | OR WITHDRAWAL OF REFERENCE |
| vs. | : | DOCUMENT NO. 41 |
| BARBARA L. REILLY and | : | PLAINTIFF'S MOTION FOR SUMMARY |
| THOMAS REILLY, Defendants | : | JUDGMENT |
| | : | DOCUMENT NO. 34 |
| | : | MOTION FOR RECUSAL |

OPINION

APPEARANCES:

CHRISTOPHER P. SCHULLER, ESQ. and TIMOTHY P. PALMER, ESQ.,
    PITTSBURGH, PA, ATTORNEYS FOR PLAINTIFF
VINCENT A. COPPOLA, ESQ. and VICTOR A. PRIBANIC, ESQ.,
    WHITE OAK, PA, ATTORNEYS FOR DEFENDANTS

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

September 11, 2008

OPINION

I. Introduction.

Ernst & Young, LLP, successor to Arthur Young & Company ("E&Y") filed the within Complaint on September 27, 2007. E&Y seeks a permanent injunction barring Barbara L. Reilly ("Mrs. Reilly") and Thomas Reilly ("Mr. Reilly") (or Mrs. Reilly and Mr. Reilly collectively, the "Reillys") from continued prosecution of a tort action in the Court of Common Pleas of Butler County, Pennsylvania (the "Court of Common Pleas"), which is captioned Reilly v. Ernst & Young, LLP, Civil Action No. 97-10022 (the "State Action").

1

Presently before the Court are the Reillys' Motion to Dismiss, or in the Alternative, For Abstention and E&Y's Motion for Summary Judgment.

The Motion for Recusal was withdrawn at the Argument held on August 6, 2008. We have considered the numerous pleadings and the Briefs filed by the parties and heard oral argument and find that the remaining issues are ready for decision.

## II. Factual Background.

The within bankruptcy case was commenced on June 3, 1986 when Earned Capital Corporation, Managed Properties, Inc., Canterbury Village, Inc. and Eastern Arabian, Inc. (collectively, the "Debtors") each filed separate voluntary Petitions under Chapter 11 of the Bankruptcy Code. By Order dated June 5, 1986, the Court ordered that the separate cases be jointly administered under the case entitled Earned Capital Corporation at Case No. 86-21474 (the "Bankruptcy Case").

At the time of the bankruptcy filing, the Reillys jointly owned as tenants by the entireties, one-half of the stock of Canterbury Village, Inc. and one-third of the stock of Eastern Arabian, Inc.

The Debtors were engaged in the business of selling shares of investment in various property where investors were promised a certain annual return on investment. Shares were oversold when Debtors had to continue the selling program in order to maintain the payments to investors.

Debtors' financial affairs were in disarray and the affairs of each of the Debtors were substantially intertwined.

Arthur Young & Company, the predecessor to E&Y, was engaged by the Debtors to serve as their accountant in the bankruptcy case.[1] The Motion for Approval of E&Y as accountant was granted by Order dated June 12, 1986.

The Debtors had minimal debt to ordinary trade creditors and some $6,000,000 in debt to creditors holding secured claims against Debtors' property. The vast majority of Debtors' obligations, which totaled over $60,000,000 were owed to those thousands of individuals who had made investments in the Debtors ("Investors"). In exchange for depositing monies with the Debtors, the Investors had received various documents entitled "Agreement of Sale" for fractional interests in real estate, various agreements to document the purchase of fractional interests in horses, documents entitled "Lease and Breeding Management Agreement" and "Bond and Warrant." The exact status of the Investors was unknown, i.e., whether they were investors, bondholders, or some other form of general creditor. They were all referred to as the investor class or the Investors and were treated as the only creditors in the Bankruptcy Case who were impaired and at risk. Many of the Investors filed proofs of claim as unsecured creditors. In re Earned Capital Corp., 331 B.R. 208 (Bankr. W.D. PA 2005) aff'd sub nom Geruschat v. Ernst & Young, LLP, 346 B.R. 123 (W.D. PA 2006), aff'd sub nom In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007) (the "Geruschat" case).

The Investors were appointed to and represented by the Official Committee of Unsecured Creditors in the Bankruptcy Case ("Committee"). The Committee was represented by legal counsel and took a very active role in the Bankruptcy Case.

The Reillys retained separate legal counsel to represent their interests in the bankruptcy case. The Reillys, through counsel, strenuously objected to substantive consolidation of the

---

[1] The accounting firm is referred to in this Opinion as E&Y.

separate corporate cases. The Reillys also sought to withdraw the bankruptcy cases for Canterbury Village, Inc. and Eastern Arabian, Inc.

The Debtors and the Committee filed competing plans of reorganization. Both plans contemplated substantive consolidation of the assets and liabilities into one surviving reorganized corporation. The Amended Plan of Reorganization of Committee of Unsecured Creditors (the "Plan") was confirmed by the Court on October 21, 1987 after an evidentiary hearing to consider whether substantive consolidation was appropriate. The Court found that each of the Debtors was insolvent and that substantive consolidation was appropriate. The Reillys' objections to substantive consolidation and their Motion to Withdraw or Dismiss the Canterbury Village, Inc. and Eastern Arabian, Inc. Petitions were denied and the Reillys' objections to the Plan were dismissed. The Plan was confirmed. The Plan provided that former equity holders of the Debtor retained no interest.

The Reillys filed an appeal from the Confirmation Order. The Reillys list in the Statement of Issues presented on appeal:

. . .

> 2. Did the proponents of the substantive consolidation sustain their burden of proof as required under the law?
>
> 3. Did the proponents of the substantive consolidation fulfill all of the criteria necessary for a substantive consolidation in order for such equitable relief to be granted?
>
> . . .
>
> 6. Is CANTERBURY VILLAGE, INC. a separate solvent corporation, which should not be in bankruptcy?
>
> 7. Can the issue of substantive consolidation be determined without an audit of each corporation?

The Appeal was dismissed as moot by the District Court on December 18, 1990. The District Court found that the Reillys had appealed only the confirmation Order and had not filed an appeal of the motion regarding substantive consolidation.

Under the Plan, the Debtors were merged into one successor entity that was eventually named Seven Fields. All of the Debtors' assets were pooled and became assets of Seven Fields.

The only impaired class of creditors under the Plan was the Investor Class of unsecured creditors (described in the Plan as the Class 5 claims). Secured creditors and trade creditors were paid in full. Under the Plan, each unsecured creditor received common stock in Seven Fields at a par value equal to 5% of its allowed claim. The remaining 95% of each allowed claim remained as an unsecured, nondischargeable debt. The Investors became the new shareholders of the reorganized Seven Fields and thus were in control of the assets, sale or development of those assets, and distribution of funds. The former equityholders of the Debtor, including the Reillys, retained no interest under the terms of the Plan.

The Plan contemplated that the Investor class of creditors would manage Seven Fields with a goal of full recovery of the invested amounts. The Plan provides:

> 6.08 The surviving corporation, as may be authorized by its Board of Directors, shall periodically distribute available funds, without interest, in prorata repayment of the aforesaid waived non-discharged Class 5 debts.
> 6.09 Assets will be sold or managed frugally, carefully, responsibly and utilizing sound business practices. Undeveloped assets will be developed as and when fair and reasonable proposals have been received, studied and approved. All activities of the surviving reorganized corporation shall seek to achieve the goal of full payment to Class 5 creditors.

The Plan provides for the Debtors' Chapter 11 cases to remain open until all unsecured claims are paid in full:

> 8.05 These Chapter 11 cases shall not be closed or deemed closed until all non-discharged Class 5 claims have been fully paid and all matters set forth in section 9.01 have been finally concluded.

Section 9.01 of the Plan sets forth the retention of jurisdiction provisions. It provides in relevant part:

> The Bankruptcy Court shall retain exclusive jurisdiction [in] this case as long as necessary for the following purposes:
>
> . . .
>
> (b) to determine and fix (i) all administrative claims. . .
>
> . . .
>
> (d) to adjudicate any matters or disputes arising under or in connection with (i) the Plan and (ii) such other matters as may be provided for in the Confirmation Order;
>
> . . .
>
> (f) to hear and determine any and all pending applications, motions, adversary proceedings or contested matters;
>
> (g) to amend, or to correct any defect, cure any omissions or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary, to carry out the purpose and intent of the Plan. . .
>
> . . .
>
> (i) to issue such orders as may be necessary to enable the surviving reorganized Debtor to implement this Plan and effect distributions to holders of claims.
>
> (j) to hear and determine any and all adversary proceedings or contested matters to be filed subsequent to the Confirmation Date.
>
> . . .

E&Y was engaged by the Debtors. E&Y's work product was shared with the Committee. E&Y filed Applications for Allowance of Compensation. E&Y's Application was the subject of an objection by the Reillys and the Committee. An evidentiary hearing was held and partial interim fees were awarded. The unpaid portion was the subject of subsequent stipulation

between E&Y and Seven Fields for the payment of remaining fees in a reduced amount. The Stipulation was approved by the Court.

On April 30, 1996, Seven Fields filed a Motion for Final Decree. On May 14, 1996, the Final Decree was entered and the case closed on the Court's docket.

On January 8, 1997, the Reillys filed the State Action. The Defendants are E&Y and Charles Modispocher ("Modispocher") (or E&Y and Modispocher collectively, "the Defendants"). Modispocher is a former E&Y partner who was in charge of E&Y's engagement with the Debtors. The Reillys filed an Amended Complaint in the Court of Common Pleas on January 13, 1999. The Reillys assert claims for negligence, civil conspiracy, and fraudulent misrepresentation or nondisclosure.

The Reillys assert that the Defendants erroneously determined that each of the Debtors was insolvent and therefore the Debtors were placed within the jurisdiction of the Bankruptcy Court; that Defendants substantially understated the value of Canterbury Village, Inc. and Eastern Arabian, Inc. and overstated the liabilities of all of the Debtor entities; that the Defendants improperly treated the assets and liabilities of each of the Debtors as commingled, and failed to correct the errors after receiving information that their work was inaccurate. The Reillys assert that the Defendants acts and omissions "led to the partial or complete loss of the value of the stock which [the Reillys] owned in Canterbury Village, Inc. and Eastern Arabian, Inc., by virtue of the treatment of the corporations while in the bankruptcy court and as a result of the disposition of assets of both corporations at values well below their then fair market value."

On November 20, 2003, the Court of Common Pleas entered a judgment in favor of Mrs. Reilly in the amount of $102,718,989. Reilly v. Ernst & Young, LLP, No. 97-1002, 2003 W.L.

22761810 (Pa. Com. Pl., November 20, 2003), 66 Pa. D.&C. 4th 252 reversed 929 A.2d 1193, 2007 Pa.Super. 216 (Pa.Super.2007). The Court of Common Pleas refused to enter judgment for Mr. Reilly under the legal standard that a person shall not benefit from their own wrongdoing. On appeal, the Pennsylvania Superior Court vacated the Court of Common Pleas' Order, finding that "the severe sanction of deemed admissions" imposed upon E&Y for discovery violations was improper and remanded the case to the Court of Common Pleas for a new trial. Reilly v. Ernst & Young, LLP, 929 A.2d 1193, 2007 Pa.Super. 216 (Pa.Super. 2007).

Following the Court of Common Pleas' verdict in favor of Mrs. Reilly, on November 20, 2005, a putative class of former shareholders of Earned Capital Corp. sued E&Y and Modispocher in the Court of Common Pleas in a case captioned Geruschat v. Ernst & Young, LLP. E&Y removed the Geruschat action to this Court on November 5, 2004 which was assigned Adversary No. 04-3236. The Geruschat Plaintiffs alleged that while serving as accountants for the Debtors during the course of the bankruptcy proceedings, E&Y and Modispocher made false and erroneous statements concerning the solvency of the Debtor entities by, inter alia, mischaracterizing certain amounts of equity as debt, and as a result of E&Y's negligence, the Geruschat Plaintiffs lost significant value of their interests.

E&Y filed a Motion to Dismiss the Geruschat case which we granted by Opinion and Order dated September 2, 2005. In re Earned Capital Corp., 331 B.R. 208 (Bankr. W.D. PA 2005) aff'd sub nom Geruschat v. Ernst & Young, LLP, 346 B.R. 123 (W.D. PA 2006), aff'd sub nom In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007).

The underlying facts of this matter are nearly identical to those in the Geruschat case. Id.

Both the Geruschat case and this action are based upon the premise that the Debtor entities were not insolvent and because of the negligence of E&Y in failing to use ordinary skill

and reasonable care in making an analysis of the books and records of the Debtor corporations, the Plaintiff lost valuable property.

Both the Reilly and the Geruschat Plaintiffs allege that E&Y erroneously mischaracterized substantial debt as equity and that as a result of E&Y's mischaracterizations value was lost.

The Geruschat Complaint was dismissed inter alia under the doctrines of res judicata, collateral estoppel and judicial estoppel. Id.

### III. Jurisdiction, Abstention, Core v. Non-Core Proceeding, Case Reopening.

As previously stated, the underlying facts and the issues in this case are nearly identical to those in the Geruschat case. For all of the same reasons that were explained in detail in the Geruschat case, we find that the within Complaint is a core proceeding; that the claim is a claim "arising in" a bankruptcy case and that as a result, jurisdiction in this Court is appropriate; the case was appropriately reopened; and the Motion for Abstention must be denied. Id.

### IV. Standard for Summary Judgment.

Fed.R.Civ.P. 56(c) made applicable to these proceedings pursuant to Fed.R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

V. <u>Injunctive Relief</u>.

E&Y seeks a permanent injunction under 11 U.S.C. § 105, 28 U.S.C. § 1651(a) and 28 U.S.C. § 2283 barring the Reillys from continuing the State Court Action. E&Y asserts that this Court is expressly authorized to enjoin the State Action pursuant to 11 U.S.C. § 105 and under two exceptions to the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283.

The Reillys oppose an injunction. They assert that E&Y lacks standing to enjoin the State Action; that E&Y's request for an injunction is not appropriate after litigating the State Action for over ten years; that the relitigation exception to the AIA is inapplicable; that the State Action does not threaten the integrity of prior Bankruptcy Court Orders; and that the issues raised in the State Action are not precluded by the doctrine of <u>res judicata</u> with respect to issues addressed in the bankruptcy case.

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The authority imparted by the All Writs Act is limited, however, by the AIA, which prohibits injunctions "to stay proceedings in a State Court except as expressly authorized by Acts of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

"The two statues act in concert, and "[i]f an injunction falls within one of [the Anti-Injunction Act's] three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." <u>In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation</u>, 369 F.3d 293, 305 (3d Cir. 2004) <u>quoting</u> <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 134 F.3d 133, 143 (3d Cir. 1998).

> The absolute bar against federal injunctive measures contemplated by the Act is "qualified only by specifically defined exceptions," *Richman Bros. Co.*, 348 U.S. at 516, 75 S.Ct. at 455, - exceptions to be read narrowly: not "enlarged by loose statutory construction," *Chick Kam Choo*, 486 U.S. at ___, 108 S.Ct. at 1689, or "whittled away by judicial improvisation," *Richman Bros.*, 348 U.S. at 514, 75 S.Ct. at 454. Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Lines*, 398 U.S. at 297, 90 S.Ct. at 1748. Unless one of the exceptions governs the order, federal courts are "absolute[ly] prohibit[ed]" from enjoining a state judicial proceeding. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Mitchum*, 407 U.S. at 228-29, 92 S.Ct. at 2154-55.

United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko, 885 F.2d 1170, 1176 (3d Cir. 1989).

E&Y has standing to pursue an injunction. Professionals who participate in the administration of a bankruptcy estate, as did E&Y in this case, are entitled to seek injunctive relief under the exceptions to the AIA. Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co., 542 F.2d 45 (7th Cir. 1976).

To succeed in obtaining an injunction, E&Y must show that the injunction (1) is expressly authorized by Congress; (2) is necessary in aid of the federal court's jurisdiction; or (3) is necessary to protect or effectuate the federal court's judgment. 28 U.S.C. § 2283.

## VI. Expressly Authorized by Congress.

The Bankruptcy Code is an "expressly authorized" exception to the AIA. In re Parker, 499 F.3d 616, 626-29 (6th Cir. 2007); In re Davis, 691 F.2d 176, 177-78 (3d Cir. 1982).

> Section 105(a) of the Bankruptcy Code is an "expressly authorized" exception to the Anti-Injunction Act. *See In re Baptists Medical Center of New York*, 80 B.R. 637, 641 (Bankr.E.D.NY 1987); *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 177-78 (3d Cir. 1982); *Kranzdorf v. Alter (In re Fidelity*

11

> *America Financial Corp.),* 53 B.R. 930, 932-33 (Bankr.E.D.PA 1985); H.R.Rep. No. 595, 95th Congress, 1st Sess.317 (1977); S.Rep. No. 95-989, 95th Congress, 2d Sess. 29 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5814, 6274. It authorizes the Bankruptcy Court to enjoin state court proceedings under proper circumstances. *In re Davis, supra., In re Fidelity America Financial Corp. supra.;* 2 *Collier on Bankruptcy* ¶¶ 105.02 (15th ed. 1987). As Collier observes, "[t]he basic purpose of the section [§§ 105] is to enable the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case." 2 Collier on Bankruptcy, *supra.* §§ 105.02 at 105-3. In fact, section 105(a) contemplates injunctive relief in precisely those instances where parties are "'pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate.'" *Manville Corporation v. Equity Security Holders Committee (In re Johns-Manville Corp.),* 801 F.2d 60, 63 (2d Cir. 1986) (quoting *In re Davis,* 730 F.2d 176, 183-84 (5th Cir. 1984)). Accordingly, the bankruptcy exception to the Anti-Injunction Act allows this Court, pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, together with the relevant case law, to enforce the injunction provisions in its Order Confirming the Debtors' Plan. The Anti-Injunction Act, therefore does not bar this Court from enforcing its own Confirmation Order.

In re U.S.H. Corp. of New York, 280 B.R. 330, 338-39 (Bankr. S.D. NY 2002).

"While the policy underlying the Anti-Injunction Act is the desire to avoid disharmony between federal and state systems, certain exceptions reflect congressional recognition that injunctions may sometimes be necessary in order to avoid that disharmony." In re U.S.H. Corp. of New York, 280 B.R. at 338.

The Reillys' claims are identical to those in the Geruschat case. In both cases, it is alleged that the negligence of E&Y caused the Bankruptcy Court to find that each of the Debtor entities was insolvent, and that as a result of the perception of insolvency the Plaintiffs, both in Geruschat and here the Reillys, lost valuable property.

The Reillys were represented by counsel and were active participants in the bankruptcy case. The Reillys opposed consolidation and asserted in the bankruptcy case that the Debtor

12

entities were solvent and opposed substantive consolidation. The Reillys had every opportunity to challenge E&Y's findings and testimony when the Reillys opposed the Motion to Consolidate. The Reillys also opposed the fees requested by E&Y for services that it performed under the auspices of the Bankruptcy Court. The matters raised in the State Court Action were fully adjudicated years ago after protracted and acrimonious litigation in this Court. The Reillys, as the losing party, even after appeal, simply refuse to be bound by the outcome.

> A federal court has the inherent power and jurisdiction to issue an injunction to effect its prior judgments and protect against future attempts to attack or evade those judgments. The Third Circuit has itself issued such injunctions on several occasions. *See Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972); *Silverman v. Constitution Life Insurance Company*, 345 F.2d 177 (3d Cir. 1965) *See also Adams v. American Bar Assoc.*, 400 F.Supp. 219 (E.D. PA 1975). Other federal courts as well have recognized their ability to enjoin vexatious attempts at relitigation of prior federal court judgments, such as those with which we are confronted in these proceedings. *See Walter E. Heller & Co., Inc. v. Cox, supra.*; *Boruski v. Stewart*, 381 Supp. 529 (S.D. NY 1974)

Albright v. R.J. Reynolds Tobacco Co., 463 F.Supp. 1220, 1229 (W.D. PA 1979)

"The court may enjoin state proceedings at any point in time from the institution to the close of the final process." Atlantic Coast Demolition and Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 988 F.Supp. 486, 495 (D. NJ 1997) citing Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293 (1935); *see generally* 17 *Moore's Federal Practice* ¶ 121.04[3] (3d ed. 1997); 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4222 (2d ed. 1988).

While the State Court Action has been pending for eleven years, its present status is back to square one, having been remanded by the State Appellate Court for a new trial. There has been no final order in which the State Court has made a determination that the doctrines of res judicata, collateral estoppel and judicial estoppel are inapplicable. It remains appropriate for this

13

Court to consider those issues. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523-24, 106 S.Ct. 768 (1986).

For all of the same reasons stated in the Geruschat case, the doctrine of res judicata, collateral estoppel and judicial estoppel apply and the Reillys cannot reopen and relitigate those issues in State Court. Such litigation amounts to a collateral attack on the Order of Confirmation of the Debtor's Plan of Reorganization and of the Order of Approval of E&Y's fees. An injunction is necessary in order to protect and effectuate the prior decisions of this Court.

E&Y's Motion for Summary Judgment will be granted. The Reillys' Motion to Dismiss, or in the Alternative, For Abstention, will be denied. An appropriate Order will be entered.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 86-21474 |
| | : | CHAPTER 11 |
| EARNED CAPITAL CORPORATION, | : | ADVERSARY NO. 07-2496 |
| DEBTOR | : | DOCUMENT NO. 1 |
| | : | COMPLAINT FOR INJUNCTIVE |
| | : | RELIEF |
| ERNST & YOUNG, LLP successor | : | DOCUMENT NO. 37 |
| to ARTHUR YOUNG & | : | DEFENDANTS' MOTION TO |
| COMPANY, Plaintiff | : | DISMISS, OR IN THE |
| | : | ALTERNATIVE, ABSTENTION |
| | : | OR WITHDRAWAL OF |
| | : | REFERENCE |
| vs. | : | DOCUMENT NO. 41 |
| BARBARA L. REILLY and | : | PLAINTIFF'S MOTION FOR |
| THOMAS REILLY, Defendants | : | SUMMARY JUDGMENT |

ORDER

This 11th day of September, 2008, in accordance with the accompanying Opinion, it shall be, and hereby is ORDERED as follows:

1. The Motion for Recusal is marked as WITHDRAWN.

2. The Motion to Dismiss, or in the Alternative, For Abstention filed by Barbara L. Reilly and Thomas Reilly, is DENIED.

3. The Motion for Summary Judgment filed by Ernst & Young, LLP, successor to Arthur Young and Company, is GRANTED.

4. Barbara L. Reilly and Thomas Reilly are permanently enjoined from continuing to prosecute Civil Action No. 97-10022 in the Court of Common Pleas of Butler County, Pennsylvania.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge